**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

| | |
|---|---|
| CHRIS LEE CARROLL, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> NANCY BERRYHILL, ACTING ) <br> COMMISSIONER OF SOCIAL ) <br> SECURITY ADMINISTRATION, ) <br> ) <br> Defendant. ) <br> ) | No. SA CV 17-729-PLA <br><br> **MEMORANDUM OPINION AND ORDER** |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on April 20, 2017, seeking review of the Commissioner's denial of his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") payments. The parties filed Consents to proceed before a Magistrate Judge on May 8, 2017, and May 19, 2017. Pursuant to the Court's Order, the parties filed a Joint Stipulation (alternatively "JS") on February 20, 2018, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

## II.

## BACKGROUND

Plaintiff was born on December 25, 1969. [Administrative Record ("AR") at 39, 198, 205.] For purposes of his application for DIB, he has past relevant work experience as a shipping and receiving clerk, telephone solicitor, and office machine servicer; he has no past relevant work for purposes of his application for SSI payments. [AR at 38, 39, 75-76.]

On October 9, 2013, plaintiff protectively filed an application for a period of disability and DIB, and an application for SSI payments, alleging that he has been unable to work since May 1, 2003.[1] [AR at 198-204, 205-08.] After his applications were denied initially and upon reconsideration, plaintiff timely filed a request for a hearing before an Administrative Law Judge ("ALJ"). [AR at 152-53.] A hearing was held on July 8, 2015, at which time plaintiff appeared represented by an attorney, and testified on his own behalf. [AR at 48-80.] A medical expert ("ME") and a vocational expert ("VE") also testified. [AR at 61-67, 74-79.] On August 5, 2015, the ALJ issued a decision concluding that plaintiff was not under a disability from May 1, 2003, the alleged onset date, through August 5, 2015, the date of the decision. [AR at 29-41.] Plaintiff requested review of the ALJ's decision by the Appeals Council. [AR at 17-20.] When the Appeals Council denied plaintiff's request for review on February 22, 2017 [AR at 4-8], the ALJ's decision became the final decision of the Commissioner. See Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam) (citations omitted). This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial

---

[1] Plaintiff had a previous denial in March 2004 and did not appeal that denial. [JS at 2 n.1.] Defendant notes that because plaintiff's date last insured is December 31, 2005, there is an unadjudicated period between March 2004 and December 31, 2005, with respect to his application for DIB. [Id.]

evidence or if it is based upon the application of improper legal standards. Berry v. Astrue, 622 F.3d 1228, 1231 (9th Cir. 2010) (citation omitted).

"Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Revels v. Berryhill, 874 F.3d 648, 654 (9th Cir. 2017) (citation omitted). "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Id. (internal quotation marks and citation omitted). However, the Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." Id. (quoting Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014) (internal quotation marks omitted)). The Court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." Id. (internal quotation marks and citation omitted); see also SEC v. Chenery Corp., 318 U.S. 80, 87, 63 S. Ct. 454, 87 L. Ed. 626 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.").

## IV.

## **THE EVALUATION OF DISABILITY**

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. Garcia v. Comm'r of Soc. Sec., 768 F.3d 925, 930 (9th Cir. 2014) (quoting 42 U.S.C. § 423(d)(1)(A)).

**A.   THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006) (citing Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999)).

In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Lounsburry, 468 F.3d at 1114. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. § 404, subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that he is unable to perform past relevant work. Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992). If the claimant meets this burden, a prima facie case of disability is established. Id. The Commissioner then bears the burden of establishing that the claimant is not disabled because there is other work existing in "significant numbers" in the national or regional economy the claimant can do, either (1) by the testimony of a VE, or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2. Lounsburry, 468 F.3d at 1114. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 721, 828 n.5 (9th Cir. 1995); Drouin, 966 F.2d at 1257.

/
/
/
/
/
/

**B.   THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since May 1, 2003, the alleged onset date.[2] [AR at 31.] At step two, the ALJ concluded that plaintiff has the severe impairments of "diabetes mellitus; non-union of right humerus fracture, status-post amputation of left great toe[3]; gastroparesis; history of seizures; osteomyelitis, left 4th toe; peripheral vascular disease; major depressive disorder; and substance abuse." [Id.] At step three, the ALJ determined that plaintiff does not have an impairment or a combination of impairments that meets or medically equals any of the impairments in the Listing. [AR at 32.] She also found that in activities of daily living and social functioning, plaintiff has mild limitations, and with regard to concentration, persistence or pace, he has mild-to-moderate difficulties. [Id.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[4] to perform a range of light work as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b),[5] as follows:

> [He] can lift and/or carry 20 pounds occasionally and 10 pounds frequently; he can stand and/or walk for two hours out of an eight-hour workday; he can sit for six hours out of an eight-hour workday; he can occasionally climb stairs, but cannot

---

[2]   The ALJ concluded that plaintiff met the insured status requirements of the Social Security Act through December 31, 2005. [AR at 31.]

[3]   The ME testified that plaintiff had a "non-union fracture of the left humeral head. There was a new fracture of his right humerus. He's status post amputation of the left great toe." [AR at 62 (citing AR at 510, 566-615).] Based on this testimony, along with the fact that the humerus is an arm bone, the humeral fracture appears to be unrelated to the amputation of plaintiff's left great toe. This distinction does not impact the Court's decision herein.

[4]   RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." Massachi v. Astrue, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citation omitted).

[5]   "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §§ 404.1567(b), 416.967(b).

climb ladders, ropes and scaffolds; he can occasionally push and pull bilaterally; he cannot perform work above shoulder level with the left upper extremity; he can occasionally operate foot pedals bilaterally; he cannot crawl, squat, kneel, or crouch; he can occasionally stoop; he must avoid exposure to unprotected heights, moving and dangerous machinery, and open bodies of water; and he is limited to moderately complex tasks of an SVP 4 or less.

[AR at 33.] The ALJ specifically noted that she limited plaintiff to no more than moderately complex tasks in order "to accommodate [plaintiff's] subjective complaints of [pain and] depression" [AR at 36] and his use of psychotropic medications. [AR at 38.] At step four, based on plaintiff's RFC and the testimony of the VE, the ALJ concluded that for purposes of plaintiff's application for DIB, prior to the date last insured plaintiff was able to perform his past relevant work as a telephone solicitor; she concluded that for purposes of his application for SSI, plaintiff has no past relevant work. [AR at 38, 39, 75, 77.] At step five, based on plaintiff's RFC, vocational factors, and the VE's testimony, the ALJ found that for purposes of plaintiff's application for SSI, there are jobs existing in significant numbers in the national economy that plaintiff can perform, including work as a "touch-up inspector" (Dictionary of Occupational Titles ("DOT") No. 726.684-050), "order clerk" (DOT No. 209.567-014), and "charge account clerk" (DOT No. 205.367-014). [AR at 39-40.] Accordingly, the ALJ determined that plaintiff was not disabled at any time from the alleged onset date of May 1, 2003, through August 5, 2015, the date of the decision. [AR at 40-41.]

## V.

## **THE ALJ'S DECISION**

Plaintiff contends that the ALJ erred when she (1) failed to fully and fairly develop the record with respect to plaintiff's mental limitations; (2) failed to include plaintiff's mild limitations in social functioning in the RFC or in the hypothetical to the VE, and found at step five that plaintiff could (a) return to his past relevant work as a telephone solicitor; or (b) perform the alternative occupations of order clerk and charge account clerk, each of which requires social interaction with the public; and (3) found at step five that plaintiff could perform work as a touch-up inspector, which does not exist in significant numbers in the national economy. [JS at 4, 7-8.] As set forth

6

below, the Court respectfully disagrees with plaintiff and affirms the decision of the ALJ.

**A.    DUTY TO DEVELOP THE RECORD**

Plaintiff, who underwent a psychiatric consultive examination in February 2005, asserts that for purposes of his current applications the ALJ should have ordered a new consultative examination by a mental health professional. [JS at 5-7 (citations omitted).] He argues that counsel, at the hearing, "specifically alerted the ALJ" that a consultative mental health examination was needed, but "instead of sending [plaintiff] out for a consultative examination, the ALJ attempted to play doctor and assessed her own mental limitations." [JS at 6.] He argues that because the ALJ found that plaintiff has the severe impairment of major depression, and "conceded" that plaintiff's "mental limitations were in the range of moderate yet only assessed mild limitations," she did not meet her duty to fully and fairly develop the record. [JS at 6-7 (citations omitted).]

Defendant responds that plaintiff did not meet his burden of proving that he has a mental health disability. [JS at 8 (citations omitted).] First, plaintiff underwent a psychiatric consultative examination in February 2005 (in connection with his previous unsuccessful application for benefits) and "the doctor who examined him, Nathan E. Lavid, M.D., did not assign any functional limitations" or find that plaintiff met the diagnostic criteria for a mental health diagnosis. [JS at 9 (citing AR at 36, 337).] Next, since February 2005, plaintiff only had two visits to a psychiatrist -- in April and June 2014. [Id. (citing AR at 37-38, 797-98).] Defendant further argues that there was no ambiguity or inadequacy in the record that required further development as to plaintiff's mental health. [JS at 9 (quoting Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001)).]

As a general matter, it is plaintiff's duty to prove he is disabled. Mayes, 276 F.3d at 459; 42 U.S.C. § 423(d)(5)(A) (claimant must furnish medical and other evidence of his disability); 20 C.F.R. §§ 404.1512(c), 416.912(c) ("You must provide medical evidence showing that you have impairment(s) and how severe it is during the time you say you are disabled"). While plaintiff bears the burden of proving disability, the ALJ in a social security case has an independent, "'special duty to fully and fairly develop the record and to assure that the claimant's interests are

considered.'" Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996) (quoting Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983)); Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (citation omitted). This duty is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. Mayes, 276 F.3d at 459-60. This principle does not allow a plaintiff to shift his own burden of proving disability to the ALJ. Id. at 459. One of the tools available to an ALJ in developing a record is the consultative examination. See 20 C.F.R. §§ 404.1512(e), 416.912(e), 404.1517, 416.917 ("If your medical sources cannot or will not give us sufficient medical evidence about your impairment for us to determine whether you are disabled . . . , we may ask you to have one or more physical or mental examinations or tests."). The Commissioner has broad latitude in ordering such an examination *when there is ambiguity or insufficiency* in the record. Reed v. Massanari, 270 F.3d 838, 842 (9th Cir. 2001) (citation omitted). A consultative examination is normally required where there is an indication of a change in a claimant's condition that is likely to affect the claimant's ability to work, and the current severity of the claimant's impairment is not established. See 20 C.F.R. §§ 404.1519a(b)(4), 416.919a(b)(4).

In this case, the Court rejects plaintiff's contention that the ALJ's failure to request a new consultative examination warrants reversal or remand.

First, plaintiff has not met his burden of proving that he is disabled as a result of a mental health condition (or otherwise). Mayes, 276 F.3d at 459. Although he has provided some medical evidence relating to his depression, he has not provided evidence demonstrating that his depression limited his ability to do basic work activities during the relevant time periods. Id. (quoting 20 C.F.R. § 404.1512(a), (c)). The ALJ thoroughly considered plaintiff's limited mental health treatment records, including his history of substance abuse, from May 1, 2003, through the present. [AR at 36, 37-38.] Among other things, she reviewed and noted the following evidence and records: plaintiff interacts with family members on a regular basis despite his depression; at his February 2005 psychiatric consultative examination, plaintiff admitted he was not receiving any psychiatric treatment and "denied any depressive symptoms"; he "worried at times because of his diabetes and felt he had a learning disorder, but he endorsed no specific psychiatric symptoms";

he cares for himself and enjoys hobbies, he picks his son up from school and prepares meals for himself and his son; his mental status examination in February 2005 was noted by the psychiatric consultative examiner to be "unremarkable"; the examiner found "no functional limitations" and opined that plaintiff did not meet the diagnostic criteria for a diagnosis; he was diagnosed with "major depressive disorder and [given] prescriptions for Depakote and Zoloft in mid-2014"; his mental state at that time indicated a depressed mood and constricted affect, but his cognitive functions were grossly intact[6]; his GAF scores of 50-55 "indicated moderate symptoms at most"; there is no evidence of mental health treatment of any kind after the two psychiatric visits on April 28, 2014, and June 11, 2014 [AR at 797, 798]; and, although he was referred to a psychiatrist in February 2015, at the June 2015 hearing he said he had not been referred. [AR at 36-38 (citing AR at 60, 917).] The ALJ concluded that plaintiff's lack of treatment, together with his testimony that he continues to abuse marijuana occasionally, "diminishes his allegations of disabling mental health symptoms" and his activities of daily living and interactions "suggest no more than moderate limitations in the paragraph B criteria of functioning . . . ." [AR at 37-38 (citations omitted).] The ALJ further noted that the effects of plaintiff's current and past substance abuse, together with his depression and related treatment, "appear to cause modest impact on his concentration and . . . justify the mental limitation assessed herein . . . ." [AR at 38.] She limited plaintiff "to no more than moderately complex tasks due to his use of psychotropic medications and subjective complaints of pain and depression," and observed that the "objective records show no cognitive deficits to support greater adaptive or mental restrictions." [AR at 38.]

The ALJ made no finding that the record was ambiguous or inadequate to properly evaluate plaintiff's impairments and limitations, nor does plaintiff point to any such ambiguity. [See JS at 3-4.] Thus, the ALJ did not fail to develop the record by not ordering a consultative examination as the evidence was adequate to properly evaluate plaintiff's mental health impairments and

---

[6] That treatment record also indicated that plaintiff was disheveled, had clear speech but that at times his "tone of voice [was] barely audible," and his thought processes and thought content reflected that he was "extremely depressed, sadness+, hopelessness+, lack of self worth+, negative ruminations+, anhedonia+, [and a] sense of impending doom and gloom+." [AR at 798.]

9

limitations. Additionally, although there was some indication that plaintiff's mental health condition changed in 2014, there was no indication that his major depressive disorder was likely to affect his ability to work, and the existing records established the current severity of that diagnosis. See 20 C.F.R. §§ 404.1519a(b)(4), 416.919a(b)(4). Substantial evidence, therefore, supported the ALJ's assessment of plaintiff's RFC and her decision not to order a new consultative examination.

Remand is not warranted on this issue.

**B.    LIMITATIONS IN SOCIAL FUNCTIONING**

Plaintiff contends the ALJ erred because she failed to include plaintiff's mild limitations in social functioning (which the ALJ found at step two of her analysis [see AR at 32]) either in the RFC or in the hypothetical to the VE. [JS at 6-7.] He asserts that his past relevant work as a telephone solicitor is a "sales job" and "requires intense social interaction with others," including dealing with people beyond giving and receiving instructions. [JS at 7.] Therefore, even a "mild limitation in social functioning could eliminate this job." [Id.] Similarly, he suggests that the alternative occupations of order clerk and charge account clerk both have the "same 'people' requirement" as the telephone solicitor work and "intense interaction with the public is required for these 2 jobs." [JS at 7-8.] He states that the ALJ failed, therefore, to consider his mild social limitations and restrictions, which were "critical to the outcome" of the disability finding. [JS at 7.]

Defendant generally agrees that an RFC and hypothetical question to the VE must include all of a claimant's functional limitations. [JS at 12-14.] Defendant argues, however, that the ALJ's step two determination that plaintiff had a mild limitation in social functioning was not an RFC assessment, but instead used to rate the severity of plaintiff's mental impairment at step two. [JS at 13 (citing SSR 96-8p).] Defendant notes that there is a distinction between the findings made at step two preceding the RFC assessment, and those made after that assessment. [Id. (citing Hoopai v. Astrue, 499 F.3d 1071, 1076 (9th Cir. 2007)).]

Plaintiff points to no record evidence that his step two mild limitation in social functioning would have an impact on his work abilities. Given the lack of such evidence, the ALJ was not

required to include this finding in her RFC assessment or hypothetical to the VE.[7]

Remand is not warranted on this issue.

**C.    STEP FIVE ALTERNATIVE WORK**

Plaintiff contends that the ALJ erred at step five when she found that plaintiff could perform the work of a touch-up inspector, which plaintiff contends does not exist in significant numbers in the national economy. [JS at 7-8; see AR at 40 (ALJ found that the three alternative occupations suggested by the VE exist in significant numbers in the national economy).] Plaintiff notes that the VE testified there were only 20,000 touch-up inspector jobs in the national economy, and argues that "[t]his is not enough." [JS at 8 (citing Gutierrez v. Comm'r of Soc. Sec., 740 F.3d 519, 527-29 (9th Cir. 2014) (finding 25,000 national jobs in the national economy was a "close call")).] Defendant does not specifically address this issue.

An individual is not disabled if he can engage in work that exists in significant numbers in the national economy. Federal regulations require the agency to demonstrate that such jobs exist "in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3) (B); Gutierrez, 740 F.3d at 523-25. Isolated jobs that exist only in very limited numbers in relatively few locations outside of the region where a plaintiff lives are not considered "work which exists in the national economy." 20 C.F.R. §§ 404.1566(a), 416.966(a).  The burden of establishing that other work exists in "significant numbers," either nationally or regionally, lies with defendant. Beltran v. Astrue, 700 F.3d 386, 389-90 (9th Cir. 2012); Tackett, 180 F.3d at 1099. The ALJ carries this burden by identifying jobs that exist in significant number within the claimant's region or nationwide. 42 U.S.C. § 423(d)(2)(A).

/

---

[7] With respect to plaintiff's mild-to-moderate limitations in concentration, persistence, or pace resulting from his depression, the ALJ stated that she took these into account when she limited him to moderately complex tasks with a specific vocational preparation of 4 or less, a limitation that was included in her hypotheticals to the VE. [AR at 33, 36, 77, 79.]

1      In the Ninth Circuit, there is no "bright-line rule for what constitutes a 'significant number' of jobs." Beltran, 700 F.3d at 389. Nationwide figures, existing as they do across "several regions" of the country, necessarily require a greater total to constitute a "significant" number. See id. at 389-90; Lemauga v. Berryhill, 686 F. App'x 420, 422 (9th Cir. 2017) (noting that the Ninth Circuit has *never* found 12,600 jobs in the national economy to be a significant number).

     Here, the 20,000 national jobs available in this occupation is less than the 25,000 nationwide jobs the Ninth Circuit in Gutierrez found to be (just barely) "significant." Gutierrez, 740 F.3d at 529 (noting that even 25,000 nationwide jobs in one occupation presents a "close call" under the national standard for "significance"). However, even assuming, without deciding, that the ALJ erred in finding that the occupation of touch-up inspector existed in significant numbers in the national economy, the error is harmless because, as discussed above, plaintiff has not demonstrated that he is unable to perform his past relevant work as a telephone solicitor, or the alternative occupations of charge account clerk or order clerk, each of which exists in significant numbers in the national economy.[8]

     Remand is not warranted on this issue.

/
/
/
/
/
/
/
/
/
/

---

[8]   The VE testified that there were approximately 32,000 order clerk positions and 50,000 charge account clerk positions existing in the national economy. [AR at 40, 77-78.]

## VI.

## <u>CONCLUSION</u>

**IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **denied**; and (2) the decision of the Commissioner is **affirmed**.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: May 10, 2018

　　　　　　　　　　　　　　　　　　　　　　／s／ Paul L. Abrams
　　　　　　　　　　　　　　　　　　　　　　PAUL L. ABRAMS
　　　　　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE